IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TEMIKA A., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:21-cv-00027-L-BT |
| | § | |
| KILOLO KIJAKAZI, | § | |
| ACTING COMMISSIONER OF | § | |
| SOCIAL SECURITY, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff Temika A.'s[1] civil action seeking judicial review

pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of

Social Security. (ECF No. 1). The District Court referred the case to the  United

States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a

standing order of reference. (ECF No. 6). For the reasons explained below, the

District Court should AFFIRM the Commissioner's decision.

## Background

Plaintiff alleges that she is disabled due to lupus, high blood pressure,

thyroid disorder, and pituitary adenoma. Admin. R. 61, 68, 76, 86, 501 (ECF No.

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the
May 1, 2018 Memorandum Re: Privacy Concern Regarding Social Security and
Immigration Opinions issued by the Committee on Court Administration and Case
Management of the Judicial Conference of the United States.

1

19-1). She was born in 1975 and was 41 years old on her alleged disability onset in 2016. *Id.* at 60, 67, 76, 85, 501. Plaintiff has more than a high-school education, can communicate in English, and has past work experience as an administrative analyst. *Id.* at 501-02.

On December 13, 2016, Plaintiff applied for disability insurance and supplemental security income benefits. *Id.* at 21, 173. After her application was denied, Plaintiff exhausted her administrative remedies and filed a judicial appeal. Then, on the Commissioner's motion, the District Court remanded the case to allow the Commissioner to conduct further proceedings. *Id.* at 494. A second hearing took place in Dallas, Texas, on October 13, 2020. *Id.*

Following the second hearing, the ALJ determined that Plaintiff was not disabled and therefore not entitled to disability benefits. *Id.* at 495. At step one of the five-step sequential evaluation,[2] the ALJ found Plaintiff engaged in substantial

---

[2] "In evaluating a disability claim, the [ALJ] conducts a five-step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ to show that there is other substantial work in the national economy that the plaintiff can perform. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

gainful activity after the alleged onset date, but she had no earnings after December 2016. *Id.* at 496. At steps two and three, the ALJ found Plaintiff had severe impairments of obesity, systemic lupus erythematosus (SLE), rheumatoid arthritis, diabetes mellitus, muscle/ligament/fascia disorder—bilateral trochanteric bursitis, bilateral plantar fasciitis, and bilateral carpel tunnel syndrome and non-severe impairments of hypertension, chronic kidney disease, hypothyroidism, and fatty liver infiltration, but Plaintiff's impairments, or combination of impairments, did not meet or equal the severity of any listed impairment in the social security regulations. *Id.* at 497. At step four, the ALJ found Plaintiff was not disabled and not entitled to benefits because she has the residual functional capacity (RFC) to perform a limited range of light work, including her past work. *Id.* at 498-501. The ALJ also made alternative findings at step five that Plaintiff can work other jobs that exist in significant numbers in the national economy, including as a routing clerk, a shipping and receiving clerk, and a furniture rental clerk. *Id.* at 502-03.

Plaintiff appealed the second ALJ's decision to the Appeals Council. *See id.* at 491-93. The Council denied review. *Id.* Plaintiff then filed this action in federal district court, in which she contends the ALJ erred in finding her not disabled. Specifically, Plaintiff argues that the ALJ failed to apply appropriate legal standards, the ALJ's disability determination and denial of benefits is not supported by substantial evidence, and the Court should remand this case to the Commissioner for a calculation of benefits. Pl.'s Br. 5 (ECF No. 25).

## Legal Standards

The Court's "review of Social Security disability cases is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the [ALJ] applied the proper legal standard." *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citation and internal quotation marks omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see Copeland*, 771 F.3d at 923 ("Substantial evidence is more than a mere scintilla and less than a preponderance." (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)) (citation and internal quotation marks omitted)).

The ALJ, and not the courts, resolves conflicts in the evidence; thereafter, the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam) (citation omitted). Hence, the Court may not substitute its own judgment for the ALJ's, and it may affirm only on the grounds that the ALJ stated to support his decision. *Copeland*, 771 F.3d at 923 (citation omitted).

## Analysis

Plaintiff argues the ALJ used improper legal standards and substantial evidence does not support the ALJ's determination of disability and denial of benefits because (1) the ALJ failed to properly weigh her treating physician's opinion; (2) the ALJ failed to properly assess the intensity, persistence, and

4

limiting effects of Plaintiff's impairments; and (3) the ALJ failed to obtain an alternate medical opinion to properly develop the record and instead substituted his own lay opinion. Pl.'s Br. 5.

The ALJ determined that Plaintiff had the RFC "to perform light work." Admin. R. 498. The ALJ listed other limitations to Plaintiff's RFC that she can lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently; sit, stand, and/or walk for six hours in an eight-hour workday; bilaterally, operate hand controls frequently; bilaterally, reach overhead occasionally; frequently handle, finger, and feel with the dominant right upper extremity; never crawl and/or climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and/or climb ramps and stairs; and never work at unprotected heights, but she can occasionally work around moving mechanical parts, operate a motor vehicle, be exposed to vibration, and/or tolerate extremely hot or cold environments. *Id.* Also, Plaintiff is likely to be off task, in addition to normal breaks, for ten percent of the time in an eight-hour workday, and she likely to be absent from work for one day per month. *Id.* The ALJ determined Plaintiff's RFC "[a]fter careful consideration of the entire record." *Id.*

The ALJ bears the "sole responsibility for determining the [plaintiff's] disability status."[3] *Thibodeaux v. Astrue*, 324 F. App'x 440, 443 (5th Cir. 2009)

---

[3] 20 C.F.R. §§ 404.1527 and 416.927 provide instruction for evaluating opinion evidence for claims filed before March 27, 2017, like Plaintiff's claim filed on December 13, 2016. *See* Admin. R. 21, 173.

(citing *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)). "Determining a [plaintiff's RFC] is the ALJ's responsibility, and [the ALJ] has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (per curiam). After reviewing the hearing decision and the administrative record, the Court finds the ALJ used appropriate legal standards and the ALJ's RFC determination is supported by substantial evidence. Accordingly, the Court addresses Plaintiff's arguments.

**(1)    The ALJ properly weighed the treating physician's opinion.**

Plaintiff first argues the ALJ erred when assessing Dr. Riteesha Reddy, M.D.'s opinion. Pl.'s Br. 6. Dr. Reddy is one of Plaintiff's treating physicians. An ALJ should consider every medical opinion. 20 C.F.R. §§ 416.927(c), 404.1527(c); *Kneeland v. Berryhill*, 850 F.3d 749, 759-60 (5th Cir. 2017) (citations omitted). And the ALJ is "entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (citations omitted).

To arrive at his RFC determination, the ALJ explained that he "considered all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Admin. R. 498. The ALJ also considered "opinion evidence." *Id*. Indeed, when considering Dr. Reddy's opinion, the ALJ stated:

> [Plaintiff's] treating physician, Riteesha Reddy, M.D., completed a physical assessment, dated March 20, 2017. Dr. Reddy limited [Plaintiff's] RFC to the less than sedentary level and noted the claimant would be absent from work once or twice per month. Dr. Reddy noted [Plaintiff] would be able to handle, finger, and feel for 90% of the time in an eight-hour workday.

*Id.* at 499. And the ALJ gave weight to this opinion. *Id.* But Plaintiff contends the ALJ erred by inadequately detailing the amount of weight given to the opinion, arbitrarily noting the opinion does not specify the duration of treatment, and failing to consider the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). Pl.'s Br. 6.

      (a)   <u>The ALJ adequately detailed the amount of weight he attributed to the treating physician's opinion.</u>

According to Plaintiff, "it is impossible to ascertain what weight the ALJ actually gave [Dr. Reddy's] opinion, as his wording was far too ambiguous to allow [this Court's] review." *Id.* at 18.

In contrast to Plaintiff's contention, the ALJ gave "Dr. Reddy's RFC weight insofar as it assesses the severity of [Plaintiff's] impairments" because the "treatment notes from Dr. Reddy are general in nature, very brief," and "are inconsistent with the limitation Dr. Reddy assigns to [Plaintiff], in that the RFC functional limitations identified are much more severe than those documented in [Dr. Reddy's] office visit notes." Admin. R. 499. Therefore, the ALJ "considered [Dr. Reddy's] opinion as to the nature and severity of [Plaintiff's] impairments. *Id.* "[C]onsequently," the ALJ "limited [Plaintiff] to frequent handling, fingering, and feeling and noted she would likely be absent from work one day a month," and the

ALJ noted, according to Dr. Reddy, Plaintiff "would require extra breaks during a flare-up . . . [and] has flare-ups once per month" so the ALJ "limited [Plaintiff] to being off[ ]task for 10% of a workday." *Id.* at 499-500. Therefore, the ALJ gave considerable weight—but not controlling weight—to Dr. Reddy's opinion that "adequately accounts for [Plaintiff's] symptoms." *Id.* at 500. The ALJ adequately explained that he gave Dr. Reddy's opinion less than controlling weight because Dr. Reddy's suggested limitations are inconsistent with Plaintiff's treatment notes and Plaintiff's statements. The ALJ further noted that "ambiguity is a hallmark of [Plaintiff's] documented medical course." Accordingly, the ALJ adequately detailed the amount of weight he attributed to Dr. Reddy's opinion.

      (b)    <u>The ALJ adequately noted Plaintiff's treating physician's duration of treatment</u>.

According to Plaintiff, the ALJ rejected Dr. Reddy's opinion "on the basis of form" because Dr. Reddy did not include her treatment duration in her notes. Pl.'s Br. 19-20. However, the ALJ notes, "Dr. Reddy did not state how long she has treated [Plaintiff], when the treatment began, and/or if it continues," so the ALJ stated "[i]t appears Dr. Reddy treated [Plaintiff] for approximately 14 months." Admin. R. 499. And the hearing transcript further reflects that Plaintiff told the ALJ Dr. Reddy treated her "for maybe about a year and a half." *Id.* at 524. As Plaintiff contends, the ALJ must consider the relevant factors required by §§ 404.1527(c) and 416.927(c) when giving anything but controlling weight to a treating physician's opinion. Pl.'s Br. 21; *see* 20 C.F.R. §§ 404.1527(c), 416.927(c).

Under §§ 416.927(c) and 404.1527(c) one factor a court must weigh is the length of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(c); *Luzenia K. v. Saul*, 2020 WL 2574933, at \*14 (N.D. Tex. May 20, 2020). Here, the ALJ weighed the factor required by §§ 416.927(c) and 404.1527(c) when he noted Dr. Reddy's approximate duration of treating Plaintiff. Accordingly, the ALJ adequately noted Dr. Reddy's duration of treatment as he considered all the required factors of §§ 416.927(c) and 404.1527(c).

> (c)    The ALJ adequately considered the necessary factors to give less than controlling weight to the treating physician's opinion.

According to Plaintiff, the ALJ failed to consider "any of the pertinent factors set forth in [the regulations]." *See* Pl.'s Br. 21. When considering medical opinions, the ALJ generally gives more weight to opinions by examining physicians than physicians who did not examine the plaintiff. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1); *Kneeland*, 850 F.3d at 760 (citations omitted). And the ALJ should give even greater weight to treating physicians' opinions. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Rollins v. Astrue*, 464 F. App'x 353, 355 (5th Cir. 2005). The ALJ can reject any physician's opinion "when the evidence supports a contrary conclusion." *Qualls v. Astrue*, 339 F. App'x 461, 466 (5th Cir. 2009). But "fundamentally, the ALJ cannot reject a medical opinion without an explanation." *Kneeland*, 850 F.3d at 760 (citation and internal quotations omitted); *accord Winston v. Berryhill*, 755 F. App'x 395, 398 (5th Cir. 2018). Here, the ALJ gave weight to the treating physician's opinion as explained above, but he rejected only

the limitations that were inconsistent with the physician's treating notes, Plaintiff's statements, and other evidence.

In explaining a rejection of a physician's opinion, the ALJ does not have "to state the weight given to each symptom and diagnosis in the administrative record." *Michelle K. M. v. Berryhill*, 2019 WL 1243355, at *13 (N.D. Tex. Mar. 18, 2019). An "ALJ's failure to mention a particular piece of evidence does not necessarily mean that [the ALJ] failed to consider it" when "the ALJ's decision states explicitly that [the ALJ] considered the entire record in [the ALJ's] decision." *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005). Although there is not a "statutorily or judicially imposed obligation for the ALJ to list explicitly all the evidence he takes into account in making his findings, § 404.1527(f)(2) does require that the ALJ articulate the weight given to" medical experts. *See Hammond*, 124 F. App'x 847, 851.

The ALJ may assign little or no weight to an "acceptable medical source" or to "a treating physician's opinion" only upon a showing of good cause. *Young*, 689 F. App'x at 822; *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005); *see Kneeland*, 850 F.3d at 760-61 ("Although the [ALJ] is correct that 'when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony,' . . . rejecting a conflicting medical opinion nevertheless requires an explanation."). Good cause exists when the acceptable medical-source opinion "is brief or conclusory, not supported by acceptable clinical laboratory

diagnostic techniques, or otherwise unsupported by the evidence." *Young*, 689 F. App'x at 822.

The ALJ considers six factors to determine the degree of weight to afford a medical source opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Luzenia K.*, 2020 WL 2574933, at *14. The factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion by medical signs and laboratory findings; (4) the consistency of the medical opinion with the record; (5) whether the medical opinion is one of a specialist or not; and (6) any other factors the claimant or others bring to the Commissioner's attention. 20 C.F.R. §§ 404.1527(c), 416.927(c); *Luzenia K.*, 2020 WL 2574933, at *14. The ALJ must engage in a detailed analysis of the relevant factors when "the ALJ rejects the *sole* relevant medical opinion before it" or a treating physician's opinion. *Luzenia K.*, 2020 WL 2574933, at *14 (emphasis in original) (citing *Quall v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009) (per curiam)); *Kneeland*, 850 F.3d at 760.

As discussed above, the ALJ addressed the length of the treatment relationship. He also discussed the remaining factors. For instance, when discussing the nature and extent of the treatment relationship, the supportability of the opinion by medical signs and laboratory findings, and Dr. Reddy's specialty, the ALJ provided:

> [Plaintiff's] treatment notes from Dr. Reddy are general in nature, very brief, and list [Plaintiff's] active medications. They appear to be check-ups and labs[] but do not support and are inconsistent with the

limitations Dr. Reddy assigns to [Plaintiff], in that the RFC functional limitations identified are much more severe than those documented in the office visit notes.

Admin. R. 499 (internal citations omitted) (citing to medical records that identify Dr. Reddy as Plaintiff's rheumatologist). The ALJ further explained that Dr. Reddy's opinion that Plaintiff was so severely limited as to render her disabled was inconsistent with the medical evidence in the record:

> Overall, ambiguity is a hallmark of [Plaintiff's] documented medical course. Treatment notes from her primary care physician show that in February of 2017, [Plaintiff] both denied and also complained of chest pains. Around the alleged onset date, she once again denied chest pains. She also did not suffer from any pain in her joints and had no weakness. Her February notes show she had been non-compliant with her medications because she had run out in December.

> On examination, [Plaintiff] was in no acute distress. Her symptoms appear to respond well to her medications. Her May treatment notes reflect her lupus was in remission. She was having problems with carpal tunnel syndrome and was using wrist splints at night. Her hip pain showed good improvement with Meloxicam.

> By the end of 2017, [Plaintiff] complained of arthralgias and had a positive ANA test. On examination, however, her joints showed no swelling or tenderness[,] and she was nontender to the touch. Her notes from Dr. Reddy showed both muscle weakness and tenderness, as well as no acute distress, nontender to palpation, and no swelling or tenderness of the joints. It appears [Plaintiff's] chest pains emanate from pleurisy that may have been caused by her Plaquenil medication. She was switched to Meloxicam and her pleurisy resolved.

> [Plaintiff's] treatment notes for 2018 show her kidneys were unremarkable. She was experiencing only mild hand numbness, joint pain, but no joint swelling. She was in no acute distress and was mostly nontender to palpation. [Plaintiff] occasionally experiences Lupus flare-ups, but they are characterized as mild. She experiences morning stiffness, but no swollen joints. Her exams show her trochanteric bursa and her plantar fascia are nontender to palpation

> with improved symptoms. A renal ultrasound of March[] 2018[] was normal.
>
> [Plaintiff's] treatment notes for 2019, showed she was negative for arthralgias and for back pain and has a normal range of motion. Towards the end of the year, she was positive for joint pain and swelling.
>
> [Plaintiff's] treatment notes for 2020, showed she was positive for fatigue, chronic pain, numbness, paresthesias, arthralgias, back pain, and joint stiffness. She was negative for gait issues, joint swelling, and myalgias. At her exams, she was in no distress. [Plaintiff] was non-compliant with follow-ups.
>
> . . . .
>
> [Plaintiff] continues [to take] a few medications. Her treating physician stated none of [Plaintiff's] medications cause side-effects of drowsiness. Her methotrexate causes stomach upset.

Admin. R. 500-01 (internal citations omitted). Accordingly, the ALJ adequately considered the necessary factors to give less than controlling weight to the treating physician's opinion.

**(2)    The ALJ adequately assessed the intensity, persistence, and limiting effects of Plaintiff's impairments.**

Plaintiff also argues the ALJ failed to properly assess Plaintiff's intensity, persistence, and limiting effects of her impairments because the ALJ failed to consider any of the required factors, the ALJ's statements are not specific enough for the Court to understand his reasoning, and the ALJ provided only a conclusory assertion that Plaintiff's statements were inconsistent with the evidence. Pl.'s Br. 23. The Court disagrees.

In evaluating a plaintiff's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be

expected to produce the plaintiff's pain or other symptoms. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996). Once an impairment is found, the ALJ evaluates the intensity, persistence, and limiting effects of the symptoms on the plaintiff's ability to do basic work activities. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p, 1996 WL 374186, at *1. A plaintiff's statements about pain and other symptoms are not conclusive evidence of disability, but they must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that an individual is disabled. 42 U.S.C. § 423(d)(5)(A). A plaintiff's testimony must be consistent with the objective medical evidence and other available evidence. 20 C.F.R. §§ 404.1529(a)-(c)(3), 416.929(a)-(c)(3).

In all cases in which pain or other symptoms are alleged, the ALJ's decision must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's own observations. SSR 95-5p, 1995 WL 670415, at *2 (S.S.A. Oct. 31, 1995). When assessing the credibility of an individual's statements, the ALJ considers, in addition to the objective medical evidence, the following: (1) the plaintiff's daily activities; (2) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment,

14

other than medication, which the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the plaintiff uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the plaintiff's functional capacity, limitations, and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p, 1996 WL 374186, at *3. An ALJ's unfavorable credibility evaluation will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the plaintiff's complaints unless the ALJ weighs the objective medical evidence and articulates reasons for discrediting the plaintiff's subjective complaints. *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988); *see Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

Here, the ALJ weighed the Plaintiff's testimony and functional reports and explained the statements concerning the intensity, persistence, and limiting effects of the symptoms were "not entirely consistent with the medical evidence and other evidence in the record." Admin. R. 499. The Plaintiff testified at the hearing:

> [S]he is unable to sit for very long because of effects from SLE. Her feet swell, and she has to elevate them above waist level to alleviate it. She is only able to sit for about one to two hours and stand for about 20 to 30 minutes. She experiences back pain . . . she is unable to bend. She gets chest pain about once per month. She [can only] lift about five pounds. Her SLE flares about once per month. She gets pain and numbness in her hands if she uses them for very long. This happens about three time per week. She also suffers from chronic fatigue. She needs to rest following about 45 minutes of sustained physical activity.

*Id.* at 498 (internal citation omitted). However, the ALJ noted Plaintiff's testimony was inconsistent with her other reports that:

[S]he is active with her activities of daily living. She cares for a young child, including getting the child ready for school, taking her to school, and picking her up. She does some light cooking and performs light housekeeping, including cleaning, laundry, and ironing. When she has the energy, she can prepare complete meals.

[Plaintiff] drives and can go out alone. She shops for food and clothing, both in stores and on the computer. She can pay bills, count change, and handles both a savings and a checking account. She can perform all of the self-care activities, including dressing, bathing, caring for her hair, feeding herself, and toileting. She reports these activities take her more time, but she can accomplish them.

*Id.* at 499 (internal citations added). The ALJ further explained Plaintiff's complaints were inconsistent with the medical opinions, the duration and types of treatment, the objective medical evidence from years of treatment, obesity as a possibly exacerbating issue, and medications. *See id.* at 499-501. Therefore, the ALJ properly weighed Plaintiff's subjective complaints against Plaintiff's contradictory statements, the objective medical evidence, Plaintiff's daily activities, Plaintiff's frequency and duration of symptoms, factors that aggravate Plaintiff's symptoms, Plaintiff's medications, and other treatment Plaintiff received. Accordingly, the ALJ adequately assessed the intensity, persistence, and limiting effects of Plaintiff's impairments.

**(3)    Substantial evidence supports the ALJ's RFC determination.**

Last, Plaintiff argues the ALJ's RFC determination is unsupported by substantial evidence because the ALJ failed to obtain an alternate medical opinion adequately developing the record, and instead, the ALJ "imposed [his] own, non-expert opinion over those of Dr. Reddy." Pl.'s Br. 5, 24-25. The ALJ is responsible

for interpreting the medical evidence to determine Plaintiff's RFC. *Fontenot*, 661 F. App'x at 277 (citation omitted). "The ALJ makes an RFC determination based on all the relevant medical and other evidence in the record." *Gonzales v. Colvin*, 2016 WL 107843, at *9 (N.D. Tex. Jan. 11, 2016) (Fitzwater, J.) (citation omitted)).

The Court's "inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Id.* (citation omitted); *accord Gutierrez v. Barnhart*, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005) (per curiam). "If supported by substantial evidence, the [ALJ's] findings are deemed conclusive, and the court must accept them." *Jones v. Astrue*, 851 F. Supp. 2d 1010, 1015 (N.D. Tex. 2012) (citing *Richardson*, 402 U.S. at 390).

Moreover, the Fifth Circuit "held that an ALJ may not—without opinions from medical experts—derive" a plaintiff's RFC and "an ALJ may not rely on [her] own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Jeff Ivan M. v. Berryhill*, 2019 WL 3847992, at *5 (N.D. Tex. July 26, 2019) (Horan, J.) (internal quotations omitted) (*quoting Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995))), *rec. accepted*, 2019 WL 3842975 (N.D. Tex. Aug. 15, 2019) (Cummings, J.). "ALJs 'must be careful not to succumb to the temptation to play doctor' or make their own independent medical assessments." *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (Posner, J.)). However, it is the sole responsibility of the ALJ to determine the RFC, and this function is not to be confused with an ALJ

substituting her own lay opinion for a medical opinion. *Gina R. v. Comm'r*, 2021 WL 1209198, at *3 (N.D. Tex. Mar. 30, 2021) (Toliver, J.) (citing *Taylor v. Astrue*, 706 F.3d 600, 602-603 (5th Cir. 2012) (citing *Ripley*, 67 F.3d at 557 (noting the RFC determination is the sole responsibility of the ALJ); 20 C.F.R. § 404.1520c (noting the ALJ is only required to consider, not accept, medical opinion evidence)).

Here, the Court finds the ALJ's RFC findings are supported by substantial evidence. The ALJ determined Plaintiff's RFC "after careful consideration of the entire record" and having "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical and other evidence" and "considered opinion evidence in accordance with the requirements of the regulations." Admin. R. 498 (internal citations cleaned up). As discussed above, the ALJ considered each "medically determinable physical or mental impairment . . . that could reasonably be expected to produce [Plaintiff's] pain or other symptoms." *Id.* "Once an underlying physical or mental impairment(s) that could reasonably be expected to produce [Plaintiff's] pain or other symptoms" were identified, the ALJ evaluated "the intensity, persistence, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit[ed] her work-related activities." *Id.*

To adequately adhere to this legal standard, the ALJ evaluated Plaintiff's testimony and statements for consistency with the medical opinions and objective medical evidence over time. *Id.* at 498-501. The ALJ weighed each medical

opinion. *Id.* at 499. The ALJ gave considerable weight to Dr. Reddy's opinion but not all of her recommended limitations. *Id.* The ALJ provided good cause to deviate from Dr. Reddy's very restrictive RFC without dismissing her opinion as to the severity of impairments. *Id.* at 499-500. The ALJ has the sole responsibility to determine the RFC and did based on all evidence before him, giving appropriate weight to the treating physician's opinion. The Court finds the ALJ appropriately considered and resolved conflicts in the evidence. Accordingly, substantial evidence supports the ALJ's RFC determination.

### Recommendation

Because the ALJ applied the correct legal standards and substantial evidence supports the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act, the Court should AFFIRM the hearing decision in all respects.

**SO RECOMMENDED.**

May 9, 2022.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).